IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | EP-19-CR-1501-DB-1 |
| JAVIER BLANCO JR. | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Javier Blanco Jr.'s ("Mr. Blanco") "Motion to Suppress Evidence" ("Motion"), filed in the above-captioned case on May 22, 2019. On June 3, 2019, the United States of America ("the Government") filed its Response. On August 7, 2019, the Court held a hearing on Mr. Blanco's Motion at which Mr. Blanco was present and represented by counsel. After due consideration, the Court is of the opinion that Mr. Blanco's Motion should be denied.

## FACTS

Defendant is charged in a three-count indictment with intentional money laundering in violation of 18 U.S.C. §§ 1956 (a)(2)(B)(ii) and (2), bulk cash smuggling in violation of 31 U.S.C. § 5332(a)(1) and (b); and conspiracy to smuggle aliens in violation of 8 U.S.C. §§ 1324 (a)(1)(A)(v)(I), (a)(1)(A)(ii), and (a)(1)(B)(i). Indictment 1, ECF No. 15.

On April 19, 2019, Mr. Blanco entered the United States from Mexico via a pedestrian lane on the Bridge of the Americas Port of Entry in El Paso, Texas. Mot. 1, ECF No. 21; Resp. 1, ECF No. 24. Customs and Border Patrol Officer ("CBPO") Kevin Coker ("CBPO Coker") asked, in English, where Mr. Blanco was headed. Hr'g Tr. at 5, *U.S. v. Javier Blanco*

*Jr.*, (No. 19-cr-1501).[1] Mr. Blanco responded, in English, "home." *Id.* CBPO Coker than asked Mr. Blanco, in Spanish, where he was coming from. Resp. 1, ECF No. 24. Mr. Blanco responded, in Spanish, that he had gone to Mexico to visit his mother. *Id.*

Nearly simultaneously, CBPO Benito Canales ("CBPO Canales") and his trained narcotics-detecting dog were conducting a K-9 sweep of pedestrian lanes. *Id.* at 2. The K-9 unit alerted to Mr. Blanco's pockets. *Id.* CBPO Canales asked, in Spanish, what was in Mr. Blanco's pockets. *Id.* Mr. Blanco removed several items from his pockets including large bundles of U.S. currency. *Id.* After some additional discussion, CBPO Canales asked, in Spanish, how much money Mr. Blanco had. *Id.* Mr. Blanco answered in Spanish that he had $7,200. *Id.* CBPO Coker sought clarification in English, "$7,200?" *Id.* To which Mr. Blanco answered in the affirmative. *Id.*

Mr. Blanco was taken to secondary inspection where CBPOs conducted a pat down search and found additional bundles of cash. *Id.* The money was counted in Mr. Blanco's presence and totaled $15,305. *Id.* Mr. Blanco was detained and placed in custody for further investigation when CBPO Coker continued to switch between English and Spanish. *See* Hr'g Tr. at 7, 22.

Homeland Security Investigations Special Agent Juan Ortiz ("SA Ortiz) and Task Force Officer Carlos Castro removed Mr. Blanco from the holding cell and took him into an interview room. Resp. 2, ECF No. 24. SA Ortiz advised Mr. Blanco that he was investigating and would like to interview Mr. Blanco. *Id.* SA Ortiz further asked Mr. Blanco whether he would prefer to speak in English or Spanish. *Id.* Mr. Blanco responded that he understood English, and that it was fine to continue in English. *Id.* SA Ortiz proceeded to ask Mr. Blanco

---

[1] The Court is referring to an uncertified draft of the transcript from the suppression hearing. Pursuant to Section 52.002 of the Texas Government Code, this draft may not be used to contradict the certified transcription of the proceedings. There may be discrepancies in page numbers between this draft and the certified transcription.

2

numerous biographical questions in English, to which Mr. Blanco responded in Spanish. Hr'g Tr. at 11; Mot. 2, ECF No. 21; Resp. 3, ECF No. 24.

SA Ortiz then asked, in English, if Mr. Blanco would rather be advised of his rights in English or Spanish and Mr. Blanco responded that he understands both. Hr'g Tr. at 15. SA Ortiz advised Mr. Blanco that he would proceed in English, but if Mr. Blanco had a question, then he only need ask; or if Mr. Blanco felt uncomfortable with the English version of the *Miranda* rights, he could give them to Mr. Blanco in Spanish. Resp. 2, ECF No. 24. Mr. Blanco nodded in the affirmative that he understood. *Id.* While SA Ortiz read the Miranda warnings, he also showed him a standard advice of rights form. Hr'g Tr. at 13. Mr. Blanco did not indicate in any way that he was having trouble understanding English, nor did he ask for an interpreter. *Id.* Mr. Blanco never asked SA Ortiz to repeat himself. *Id.* at 14. Mr. Blanco nodded his head after each warning was read. Video of Blanco Rights Advisal, Gov't Ex. 4, ECF No. 35; Hr'g Tr. at 16. SA Oritz believed that Mr. Blanco understood English. Hr'g Tr. at 13.

After reading the form, SA Ortiz asked Mr. Blanco if he had any questions, Mr. Blanco responded, "no." Resp. 3, ECF No. 24. SA Ortiz asked Mr. Blanco to read the form aloud but did not wait for Mr. Blanco to do so. Hr'g Tr. at 26. After Mr. Blanco asked him for clarification, SA Ortiz explained to Mr. Blanco, in Spanish, that Mr. Blanco needed to acknowledge that he understood his rights by initialing next to each listed right on the waiver. See *id.* at 16; Gov't Ex. 4, ECF No. 35. Then SA Ortiz began questioning, in English, Mr. Blanco about the incident at the bridge, and Mr. Blanco immediately requested that he begin his questioning again in Spanish. Mot. 2, ECF No. 21; Resp. 3, ECF No. 24. The interview proceeded entirely in Spanish from this point. Mot. 2, ECF No. 21; Resp. 3, ECF No. 24. Mr.

3

Blanco's demeanor throughout these exchanges was calm, cooperative, and alert. Hr'g Tr. at 13–14; Gov't Ex. 4.

The Court further notes that Mr. Blanco has no known criminal history prior to this incident. Hr'g Tr. at 22. Mr. Blanco is a nineteen-year old U.S. Citizen who was two months away from completing is high school education at an alternative school for high school drop outs. Mot. 1, ECF No. 21. But he has not graduated in part due to his failure to obtain credits in English. *See* Hr'g Tr. at 18, 23. However, he passed all his other courses like History, Science, and Social Studies, which were all taught in English. Hr'g Tr. at 18. He suffers from no mental disease or defect and showed no signs of intoxication during this interaction. Resp. 5, ECF No. 24; Hr'g Tr. at 23.

## STANDARD

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Evidence obtained in violation of the Fifth Amendment must be suppressed and cannot be used at trial. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985) (explaining that the Fifth Amendment prohibits the use of compelled testimony at trial).

In *Miranda*, the Supreme Court decided that a person subjected to a custodial interrogation must be given certain warnings designed to safeguard his or her Fifth Amendment rights. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). Without a knowing and voluntary waiver of those rights, any statements made by the person cannot be used against him or her at trial. *Id.* at 444.

A defendant asking a court to suppress evidence illegally obtained must do so before trial. FED. R. CRIM. P. 12(b)(3)(C). The burden is on the defendant to prove by a

preponderance of the evidence that the evidence in question was obtained in violation of his rights. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001); *see also United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) ("It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing.").

The defendant bears the initial burden of establishing that he was subjected to a custodial interrogation. *United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984); *De La Fuente*, 548 F.2d at 533. Once the defendant establishes a prima facie case of custodial interrogation, the burden shifts to the government to establish that any waiver of the defendant's Fifth Amendment rights comported with the requirements of *Miranda* and its progeny. *De La Fuente*, 548 F.2d at 533.

A *Miranda* waiver must be both intelligent and voluntary. *Miranda*, 384 U.S. at 571–72. The decision to waive one's Fifth Amendment rights must be the product of "a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2262(2010). A court will inquire first, whether "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice," and second, whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In evaluating whether a suspect was fully aware of the rights he waived, the Fifth Circuit has considered a variety of factors, including age, education, criminal history, general familiarity with the criminal justice system, language skills, and the potential influence of any medication, drugs, or alcohol. *See, e.g, United States v. Collins*, 40 F.3d 95, 98 (5th Cir. 1994); *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998). This list, however, is not

exhaustive. The suspect's demeanor during questioning may be of particular importance, the Fifth Circuit has observed, for a suspect who listens to questions, responds appropriately and logically, and provides information in a logical manner is both likely to understand any warnings given and unlikely to be under the influence of any intoxicants. *See United States v. Reynolds*, 367 F.3d 294, 299 (5th Cir. 2004). Thus, a suspect's responsiveness to an officer's questions may be "sufficient to show a 'course of conduct indicating waiver' of the right to remain silent." *Berghuis*, 560 U.S. at 386 (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

Where there is a potential language barrier with Spanish speaking defendants, the Fifth Circuit has held that "where there is sufficient conversation between the suspect and law enforcement officers to demonstrate that the suspect had an adequate understanding of English to fully comprehend the situation, a finding that consent was voluntary may be proper." *U.S. v. Hernandez*, 2015 WL 867930, No. 14–119–SDD–SCR, *15 (M.D. La. 2015) (citing *United States v. Alvarado*, 898 F.2d 987, 991 (5th Cir. 1990)). Even if English is not his primary language, as long as the defendant can effectively communicate with the law enforcement officer at the time consent is given, the consent to search can be found to be voluntary. *United States v. Khanalizadeh*, 493 F.3d 479, 484 (5th Cir. 2007), *United States v. Ngai Man Lee*, 317 F.3d 26, 33–34 (1st Cir. 2003).

## ANALYSIS

Both the Government and Mr. Blanco agree that he was in custody during the relevant period. Hr'g Tr. at 22. Thus, the Court focuses on Mr. Blanco's argument that his interview violated his Fifth Amendment rights when he was Mirandized in English, despite Spanish being his primary language. Mot. 2, ECF No. 21. He argues that he did not knowingly and intelligently waive his rights, so his statements should be suppressed because the Court

should not presume acquiescence in the loss of fundamental rights. *Id.* at 2–3 (citing *U.S. v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005), and *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). However, the Government argues that Mr. Blanco did knowingly and voluntarily waive his rights because, despite Mr. Blanco being a native Spanish speaker, he has a demonstrated strong proficiency in the English language. Resp 4, ECF No. 24. For the following reasons, the Court agrees with the Government because Mr. Blanco had full awareness and effectively communicated with SA Ortiz when he waived his *Miranda* rights.

### A. Mr. Blanco Was Fully Aware of the Rights He Waived.

On balance, the factors that the Fifth Circuit weighs to determine a valid waiver tip in favor of the Government. *See supra* 5. While he has no experience with the criminal justice system, Mr. Blanco is an adult at nineteen years of age, a U.S. citizen, only a few credits short of obtaining his high school diploma, and was not under the influence of any medication, drugs, or alcohol. *See supra* 4. Mr. Blanco also had sufficient English language skills to allow the Court to conclude that he waived his rights with full awareness, which will be discussed in more detail in the next section.

As the Fifth Circuit has observed, Mr. Blanco's demeanor during questioning is of particular importance. Mr. Blanco listened to questions, responded appropriately and logically, and provided information in a logical manner, which shows both that he likely understood the warnings given and was unlikely to be under the influence of any intoxicants. Mr. Blanco's responsiveness to CBPO Coker and SA Ortiz's questions may be "sufficient to show a 'course of conduct indicating waiver' of the right to remain silent." *Berghuis*, 560 U.S. at 386 (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

### B. Mr. Blanco Had Sufficient Proficiency of English to Voluntarily Waive His *Miranda* Rights.

In *U.S. v. Hernandez*, a fellow district court in this circuit denied a motion to suppress a defendant's statements, despite very similar arguments as the case at bar. The court in *Hernandez* concluded that the defendant was advised of her rights in a language that she sufficiently understood for two reasons. 2015 WL 867930, No. 14–119–SDD–SCR, *15. First, the officers had been communicating with the defendant in English from the beginning of their interaction. *Id.* Second, the officers were familiar with the process for obtaining a translator, had obtained a translator when needed in the past, and testified that they would have gotten an interpreter if she did not understand English. *Id.* Multiple officers corroborated this testimony. *Id.* The court deemed their testimony credible by a preponderance of the evidence and believed that they would have gotten a translator had they reasonably believed it to be necessary. *Id.* "As such, the fact that the [d]efendant was not informed of her rights in Spanish, even if that is the language she prefers or is more comfortable with, does not negate the validity of what were otherwise knowing, intelligent and voluntary waivers of the [d]efendant's *Miranda* rights." *Id.*

Here Mr. Blanco was advised of his rights in a language that he sufficiently understands, despite his preference for Spanish, so his waiver was valid. First, during the encounter at the bridge, CBPO Coker asked Mr. Blanco a question in English and Mr. Blanco responded in English. Next, SA Ortiz asked, in English, immediately prior to reading the *Miranda* warnings whether Mr. Blanco would prefer that the rights be read in Spanish or English and Mr. Blanco stated that he had no preference because he understood both. As the Fifth Circuit held in *Alvarado*, enough conversation occurred between Mr. Blanco and law enforcement officers to demonstrate that he had an adequate understanding of English to fully comprehend the situation, so a finding that consent was voluntary is proper.

8

Second, both officers displayed, as well as testified to, frequent use of the Spanish language in their official capacity. Surveillance Footage from Pedestrian Lane at Bridge, Gov't Ex. 1; Gov't Ex. 4; Hr'g Tr. at 4 and 9. Notably, SA Ortiz who conducted the interview and read Mr. Blanco his *Miranda* warnings, is a fluent Spanish speaker who was raised speaking Spanish. Hr'g Tr. at 9. As a special agent in El Paso, SA Ortiz has interviewed thousands of bilingual suspects and witnesses. *Id.* at 19–20. He has frequently needed to switch entirely to Spanish upon recognizing that a suspect or witness was not proficient in English and vice versa. *Id.* at 20. SA Ortiz, like the officers in *Hernandez*, reasonably believed that Mr. Blanco understood English because of Mr. Blanco's responses to English and his lack of confusion. *Id.* at 20–21. Unlike the *Hernandez* officers who were merely familiar with the process for obtaining a translator, here SA Ortiz himself could and would have translated if he reasonably believed it necessary. The taped interview corroborates his testimony in which the Court can hear SA Ortiz seamlessly switching between English and Spanish. Gov't Ex. 4. ECF No. 35. Therefore, the fact that Mr. Blanco was not informed of his rights in Spanish, even if that is the language he prefers or is more comfortable with, does not negate the validity of what were otherwise knowing, intelligent and voluntary waivers of his *Miranda* rights.

## CONCLUSION

Mr. Blanco moves to suppress his statements on Fifth Amendment grounds. However, Mr. Blanco had an adequate understanding of English to fully comprehend the Miranda warnings that were read to him in English. Therefore, he voluntarily waived them with full awareness of his rights. Because all of Mr. Blanco's arguments under the Fifth Amendment fail, his motion to suppress will be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Javier Blanco Jr.'s "Motion to Suppress Evidence" is **DENIED**.

SIGNED this 12th day of **August 2019**.

_____
**THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE**